Your Honors, we're here on an appeal from a grant of a motion to dismiss by Chief Magistrate Judge Boylan, which was affirmed by District Judge John R. Tunheim. Your Honors, Robin Magee had the courage to speak out on issues of race and policing with respect to the St. Paul Police Department. When she spoke out, she was punished and she was coerced and the institution at which she was a professor was coerced as well as then-Dean Donald Lewis. Excuse me, you say the institution was coerced? That's correct, Your Honor. The institution as well as Dean Lewis were coerced by, also, Appellee Titus, who was the president and a sworn St. Paul Police officer. He was the president of the St. Paul Police Federation. Counsel, is this a letter to the editor or an op-ed piece? It's an op-ed piece, as I understand. Okay, is it in the record somewhere where you can it look like at the time it was put out? You know, I am not certain if it is in the record, Judge, because this was on a... Counsel, could you hold up just a minute? We won't hold this time against you. Can someone check on our audio system? It's a cell phone, I'm sure. It sounded like it was coming from the... Is there a photo, picture, like we've always seen, of these op-ed pieces or letters? There's not one in the record? I don't believe so. My clerk couldn't find it either. Proceed. I don't believe so, Judge, and I apologize. Oh, no, no apology. The reason being, as I say, this was a 12b6 motion. This was a motion to dismiss, which is why we're here, which is why we believe this Court should reverse the judgment below. This was a 12b6 motion, which was based on the original initial complaint of Professor McGee, which was then sought to be amended in the midst, if you will, of the motion to dismiss by the appellees. What was the connection between the TITUS and or the Police Department and or the Police Union and Hamline University in terms of this educational program or this whatever you're saying was coerced over there? Well, Professor McGee was a tenured professor at Hamline University. She, when she made her statement, Officer TITUS, David TITUS, who was also the president of the St. Paul Police Federation, contacted Dean Lewis, and those emails are a part of the allegations of the complaint. They were also accepted. There were additional allegations that were accepted by the magistrate judge when he ruled upon the Hamline sits in the cat, where we are now in St. Paul, where the city of St. Paul is the prime and the police, its police department, the primary police agency, obviously. And Hamline is, we understand it from the allegations of the complaint, had a number of connections with the St. Paul Police Department, including programs. What could you outline those? And again, this is difficult because again, this is on a 12b6 motion. So what does the complaint say? TITUS, it is alleged, had any number of, took any number of efforts to make sure that St. Paul police officers as federation members, to be precise, no longer engaged in any activities at Hamline. That St. Paul Police Department would no longer have any contracts. Does the complaint allege what activities already existed between Hamline? And I believe the complaint does allege that Hamline had educational contracts or other sorts of training contracts with SP. Do you know what paragraph? And again, your honors, let me see if I can locate that for you. But again, it's difficult because we're here where we are. If you look at our reply brief, if you look at our reply brief, the amended complaint is cited, which is paragraphs 31 and 32 that, and also 33 and 34 page 26 of the reply brief, your honor of appeals. And it goes on to say the resolution stated that meant quote, members of the St. Paul Police Federation shall not participate in any future continued education, professional training programs or other similar. That is a product of Hamline university. The reference in this police status. So again, it is a better paragraph. Thank you for finding 31, but 32 is a better paragraph for you in a council because it says discontinued, right? We request the police department discontinue any contracts or arrangement. And I guess interpreted favorably discontinue means there was something there. That's right. And what I would again, we're here in the Twombly Iqbal stage, obviously your honors, where we're talking about plausibility. It, this is not a conclusory allegation. The allegation implies, and it's plausible to imply that St. Paul police has any number of ongoing continuing education agreements or had with Hamlin training programs with Hamlin. And that as the head of the federation and a sworn officer, uh, officer Titus was indicating to Dean Lewis and Hamlin that those would stop unless action was taken against McGee for her conduct and for her comments, these continuing education programs, something that, uh, an individual officer could pay some tuition for and attend to well, your honor, your honor, as lawyers say, when we want to tell the truth as an officer of the court, I can't say categorically categorically one way or the other, but what I can say again, because we're at the 12 B six stage, what I can say is that it's plausible to believe that knowing what we know about police officers in the state of Minnesota, the requirements for their continued certification. And I think the court could easily have taken judicial notice of this. They're post board certified, but you have to say enough for us to decide whether these were state actors or not. Right. I agree. And I can't see that you've said enough to do that. Well, I think we have. And the reason that we have is because it's implicit and it's plausible that it's implicit and plausible judge beam that St. Paul police officers are going to be involved in continuing education. It's not simply because they want to edify themselves, not simply because they want to improve their, their understanding of Plato, but because they take courses at Hamlin and Hamlin law school, which are part of their ongoing qualifications to be St. Paul police officers, Titus contacts and coerces. And that's the argument that we made. I think much more clearly in our reply brief, he contacts and coerces Hamlin and Lewis into taking steps against McGee that are far more stringent than I think the record if it were developed in discovery would show far more stringent than they've ever taken against any other. And I think the complaint alleges that any other professor who was run a follow the law. And when I say run follow the law, the Hamlin's position, and I'm sure Titus's position to some extent will be that McGee had ultimately been convicted in Ramsey County of misdemeanor or gross misdemeanor tax violations. But Hamlin has had other professors. And I think that was alleged in the complaint, other professors who have had issues with the law, whether it be DWI. Tell me where that is in the complaint council. And again, your honors, I apologize. It's going to be, I'm going to ask my colleague for my rebuttal. Good, good point. Let me, let me ask you the strongest point of the other side to focus the case is the timeframe. It's April, 2007 that apparently this op-ed piece or letter the editor appears and it is September of 2009, two and a half years later, two years and five months later that he, that the professors put on leave convicted in 11, not terminated until 11. That's a long timeframe. What about attenuation? Well, I don't believe attenuation's to be respectful of judge Benton. I don't believe attenuation's an issue when we're talking about a state actor. And I think that's going to be a factual issue that goes to the issue of retaliation or reprisal in the 1983 context, which really isn't respectfully before the court right now at this stage, when we're talking about a Nick this was an ongoing process. This wasn't something that I think the record would show in the complaint would show that Titus stopped in his efforts to do. In fact, there is an allegation and there's a allegation that there was an email and I know you're going to ask me for the complaint paragraph, your honor, but I'll just try to find it. Go ahead. That Mr. Tite officer Titus contacted Dean Lewis and said, what do you need to do? And I'm paraphrasing. What do you need to do to discharge professor Robin McGee? And Dean Lewis responded, well, there's a process that I have to go through being the very astute attorney that he is. But nevertheless, that process begins a pace and it actually began even before professor McGee was convicted of the lesser charges in the Ramsey County district court. That process begins. Hamlin begins to, if I can use a phrase, get their ducks in a row to start the to start the faculty jury, to start gathering up bases for an ethics complaint against a professor McGee. And then that faculty jury process obviously takes some time, but it's clear that I believe if, even if we were here on a summary judgment review and the issue of attenuation or nexus time nexus were before the court, there's, there's clear indication that the coercion continues by Titus and Titus acting. And I believe that the district court made a mistake, not just simply as a private individual or a union member, because he also convinces then police of chief police chief, John Harrington to also file an op-ed, an op-ed that runs, as I understand it, parallel to his op-ed in the St. Paul paper. That's clearly within the ambit of the cases that I provided to the court in the reply brief, Greenville and the other cases and the Supreme Court decision, which was cited at the end of our reply brief and which Justice Breyer discusses very clearly, Brentwood Academy, that, that when a state coerces and encourages or provide significant encouragement to a private actor to take certain steps, that's clearly state action. And that's clearly what happened here. I'd like to reserve the balance of my time. Thank you, counsel. Thank you. Mr. Grant. Thank you, your honors. May it please the court, Michelle Grant appearing on behalf of appellee, Mr. David Titus. Mr. Goins argued that when Mr. Titus coerced Hamlin, the three facts pulling together apart the conclusory allegations and actually looking at the three facts as alleged by what Mr. Titus did here shows why it is important to properly apply Iqbal in this context. Your argument that that's a conclusory allegation that's prohibited by Iqbal or whatever the name of that case is, is that where you're coming from? Yes, actually pulling away those conclusory allegations of coercion, of ability, attempted official threats. You actually look at the specific factual allegations regret surrounding the three issues here with which were the op-ed in April, 2007, the resolution by the police federation, and then the September, 2009 email exchange with Mr. Dean Lewis. If you look at those actual allegations surrounding those three transactions, there's nothing to support the fact that Mr. Titus was acting under color of law. There was no official threat of sanctionable conduct against Hamlin. There was no claim that Titus had access to Ms. McGee because of his role. What about the request for a boycott? What's the effect of or announcing a boycott that somehow he would use what influence he had I assume as president of a private organization, but perhaps he included whatever influence he might have as a public official. Right, actually looking at the allegations were surrounding the boycott, which as Mr. Goying pointed out were in paragraph 31 and 32. The boycott was on behalf of the police union, which is made up of members of police officers, but it is a private organization and several courts have found that private organizations, private unions, even if representing public employees are not state actors under section 1983. And what the resolution states as alleged in the complaint was that the members of the police federation shall not participate in any continued education with Hamlin. This is a private action by private individuals deciding not to, as Judge Beam had asked me earlier, had not to enroll in personal classes. That's 31 counsel, you know, 32 says we request the police department not do it. And I now notice that paragraph 22 says that Titus, according to complaints secured an editorial by the police chief published the same day as his whatever it is that he sent in. Right, so I'll address. So what about the parallel actions here of the police chief and the head of the union? I submit that the amended complaint fails to allege any actual concerted action, any media in the minds between Mr. Titus or the union and the police department focusing on the boycott resolution and paragraph 32. What it says is that the police federation requests that the police department not entering into contracts. And the police department did not enter into contracts. There's no indication of any other communication between Mr. Titus and the police department, no indication of any agreement, any meeting in mind, no allegations of which some agreement could even be inferred. There's no allegations of what contracts the police department did not enter into Hamlet when or why no allegations of any earlier contracts, any despite Mr. Goins saying that there are was a longstanding relationship between the police department and Hamlin. The only allegation I know your honors had asked for the specific place. The only one that I can find that is in paragraph two of the complaint, which is conclusory states that there was a business relationship between Hamlin and the police department. Here, there's no allegations that the police department failed to enroll its members in classes at Hamlin that it paid for. There are no allegations supporting that. But that's under the federal rules. That's a general allegation that they're entitled to support by evidence, the business relationship. And if there is a business relationship, then there indeed may have been some state acting here. Isn't that enough? I don't believe it is here. There are no allegations to respect to any media in the minds, any potential agreement between Mr. Titus and the police department, nothing with respect to infer that there was an agreement to violate Miss McGee's rights. At the most, there is an allegation in the, that Mr. Titus attempted to conspire with the police department, but there's nothing to support any actual concerted action between Mr. Titus and the police department. And the other one, Judge Benton, that you pointed out to was the paragraph 22, where Mr. Titus allegedly solicited and secured the editorial by Chief Harrington. As you noted, the record Miss McGee did not put into the record the editorials that were there. I would submit that there's no allegation of any agreement. Even if Mr. Titus, as alleged here, solicited and secured the editorial by Chief Harrington, there's no allegation that there was any threat of official action by the police department against Hamlin or against Miss McGee. There's no connection between that editorial and her termination over four years later. Well, Professor Arthur Miller, who essentially drafted the Federal Rules of Civil Procedure, used to say at seminars that all you needed to do under the Federal Rules was to say, I hurt and it's your fault, and that's enough. Well, certainly, they have now, Iqbal and some of the later cases say you have to say more, but they've certainly said, I hurt and it's your fault, isn't that enough? And they're alleging that there's, this leads to state acting, and so there's jurisdiction under 1983, section 1983. I submit, as you noted, that under Twombly and Iqbal, that's not enough. You need to allege specific facts of here, a conspiracy with a state actor. If Mr. Titus wasn't acting under color of law, you need to allege specific allegations of conspiracy. All they say is there was a conspiracy and that's not enough. There's nothing to actually support any agreement, any meeting in the minds, or any allegations from which you can infer an agreement or meeting in the minds between Mr. Titus and any state actor here. Judge Benton had pointed out the attenuation between both the April 2007 op-ed piece as well as the May 2007 resolution, and four years later when Ms. McGee is actually terminated. Yeah, but you left out the September email. So the only other fact in the middle, Mr. Goins indicated that there was continued ongoing conspiracy, allegedly, but the only allegation in the middle is the September 2009 email, which is in paragraph 49 and 50. And I submit that Mr. Goins' paraphrasing of the email is not actually accurate as alleged in the complaint. The complaint doesn't indicate what actually was said in the email. It just conclusory notes that what Mr. Titus did was call attention to the boycott two years later and asked Hamlin to take action against Ms. McGee. And Mr. Lewis's response was just that he, quote, needed to pursue a set procedure. As the district court submitted, as the district court held, this is not enough to show concerted action between Mr. Titus and Hamlin and Dean Lewis. One, there's no indication that the email was sent under color of law other than the fact that Mr. Titus is a police officer, nothing that it was in his official capacity, no threat of official action to take against Hamlin. The complaint does not allege any threat, any coercion against Hamlin. Is there any allegation that it came from a public computer network or email address? There is no allegation that it did. And the complaint indicates that there's no indication that Hamlin took any action in response to this email. The complaint alleges that the detenuring proceedings happened after Ms. McGee was convicted of failing to file tax returns. There's no allegations that Mr. Titus was involved in any of the detenuring proceedings. And the complaint alleges that the focus of the detenuring proceedings was actually on her criminal conviction and had nothing to do with her remaining time as for my co-appellees. Mr. Jenkins. Good morning. May it please the court, Maurice Jenkins appearing on behalf of the trustees of the board of trustees. Judge Benton, I think your question on attenuation is the correct approach, at least from the standpoint of the university and Dean Lewis. As the Iqbal case clearly shows, in order to determine whether there can be a reasonable inference from the competent facts alleged, you have to look at the cause of action. In addition, you have to look at the context in which the challenged conduct arises. Now, in Iqbal, as the court is well aware, the plaintiff was alleging that the attorney general and the FBI, head FBI, conspired to support a policy of imprisoning and harshly treating high-value targets, if you will. As the court correctly analyzed the problem, and what's present here is that you can't just look at the fact that only Middle Eastern or Arab individuals of Arab origin were imprisoned without looking at the event that precipitated the conduct. In that case, the 9-11 terrorist attack. The legitimate reaction of the attorney general and the FBI to investigate and upon further review of the background of those individuals to take action was deemed to be so significant that whether or not age or national origin was involved, there had to be more facts that suggest there was something else at play. In other words, in our case, we've got necessarily elements that require Ms. Magee to show that there was a Dean Lewis with a state actor such that the University and Dean Lewis had taken an affirmative step to work together, a meeting of the minds. A private citizen doesn't become a public actor by accident. A private citizen isn't imbued with state authority by accident. The analogy to Iqbal here is that when there is finally some action taken with respect to Professor Magee, two years after this posting on the St. Paul Police Federation website by Titus, the email that Titus sends September of 2009 was on the eve of the announcement of the indictment. So now, from that point, for the tax problems, which was 19 counts, ultimately the conviction was for major gross misdemeanors. Can I step back a half step? Yes. If you say we have to analyze it in the context, now if your client, Hamline University, had contracts with the St. Paul Police Department to do educational programs and the St. Paul Police Department are public actors, wouldn't that be enough of a connection? Well, as alleged, those contracts, and I heard Brother Counsel say, as far as we know, there was something there as early as 2007. If there was indeed coercion that impacted or would have precipitated her termination, it would have manifested itself before then. In the intervening period, you've got this wholly independent event, the criminal charges, that from, if you look at the indictment and the September 2009 email from Titus that's been referred to, what are you going to do? Are you going to terminate her? Where Dean Lewis is alleged in the complaint to have said, we have a process. Well, from that point forward, the conduct is parallel at best. That is to say, would Hamline be able to articulate a legitimate, non-discriminatory, non-retaliatory rationale for moving to terminate a professor that's convicted of tax evasion? The later acts cut off the earlier transgressions, is that your idea here? And the damages would have been the same with or without Titus's action and boycott and all that sort of thing? Well, that's important because in a transaction or with respect to a claim of the plaintiff is to show that the protected activity was a significant factor. That is to say, the proof has to be, but for the evil motive, she would not have been terminated. But isn't causation a question of fact for a jury? The cause of the damages that she alleges, and the jury get to look at all of this activity and say, well, Titus's acts were part of the cause and the conviction was part of it. And so, but you want to throw the whole thing out with the whole baby out with the bathwater, so to speak. If I may have... You can respond to the question. Well, the difference is when Hamline University took steps to address the conviction of one of its law professors, it was acting within its realm as a private actor and as an employer. There's no allegation that Titus had any involvement in that process. Plus, as in the case of Iqbal, where you had 9-11, you had this elephant in the room saying, what would a rational employer do? What would the other legitimate non-discriminatory or non-retaliation motives be? And because of that presence of a legitimate motive for the university to take the actions that it did, the mere suggestion that some nebulous conspiracy hatched in 2007 and now involving the Minnesota Department of Revenue and something that's going on between the St. Louis Police Department, with no suggestion that Hamline or Dean Lewis had any involvement or meeting in the minds there, as Iqbal says, you can't simply say that the Attorney General and the Director of the FBI did what they did because of a protected characteristic. You have to... Thank you, Mr. Jenkins. Thank you. Mr. Goins? Thank you, Your Honor. Your Honor, with all respect, nexus is not here before the court. Attenuation is not here before the court. And I agree with you, Judge Beam, that's an issue if we were here on summary judgment. But we're not. We're here on whether or not these allegations are plausible. Let me just briefly clarify. Paragraph 2 of the complaint actually clarifies for me also that the business relationship between Hamline, the St. Paul Police Department, and its officers with regard to providing continuing education, speakers, and classes existed. And from that allegation, it's my understanding, and I've spoken with my colleague, that St. Paul Police Department was actually providing classes... Counsel, but your allegation in 32, that ends at the time Titus writes the newspaper story, right? I'm sorry, I didn't quite understand. That relationship ends by your paragraph 32, right? Correct. At the time of the op-ed piece in 07, correct? Because as I understand the allegations of the complaint, Titus was able to affect the boycott. And the other thing the court, I'm sure the court knows this, but it's important for the record to say every member, except for officers who were perhaps at the level of chief and maybe assistant chief, but I believe every officer, it's clear, who is a member of the St. Paul Police Federation is a sworn officer and vice versa. So the idea that there's no state action, and again, counsel moved very adroitly the argument over to conspiracy or some vague conspiracy, but that's not what the case law says. That's not what Greenwood says, which is a Supreme Court decision. Those cases, I'm sorry, Greenville, Peterson against city of Greenville, a 1963 Supreme Court decision. They make it clear that it's coercion. And the evidence is plausible that Lewis was coerced. The email exchange, which is set forth in 49 and 50, a paragraph where after the complaint, not an indictment, complaint comes out from Ramsey County on the taxes. Titus is now saying, look, we've had this boycott. Now she's got a complaint. You're going to fire her. And then there's also a paragraph 54 where Lewis says to McGee that the criminal charges would not be dismissed because she is not liked by the authorities. That's plausible for a court to believe that Lewis is feeling coerced, that Hamlin is feeling coerced, and that Hamlin believes and Lewis believes they have to take steps. And the complaint more than adequately spells out that Hamlin began through, I believe it was Professor Colbin or he's an assistant dean. They began immediately to take steps to prepare the faculty jury and if possible ethics actions against Professor McGee. Had she been a Minnesota attorney, I believe that would have happened. So again, the key here is coercion, that that becomes the basis for the state action. And that's clearly done by someone who's a sworn officer. And that's clearly subject to section 1983 liability. We ask the court to reverse the judgment. I have a question. Counsel, we have an additional question. I'd like to just follow up briefly on 32. Upon information and belief from that point forward, the public entity of St. Paul did not enter into any contracts with Hamlin. Under the clear message that I get from Iqbal, that you have to allege a sufficient background in support of the allegations that you make to bring alive, so to speak, these allegations. Wouldn't it have been necessary for you to have alleged that heretofore Hamline University had certain contracts with the St. Paul Police Department, which you do not do, and then say here and after this boycott led to or sought to not enter into any contracts? We don't know. You don't allege that there had ever been any contracts. Is that right? I understand the court's question. I disagree. I think paragraph two makes that allegation sufficiently. It makes that allegation that there was a business relationship, as the court just said, in which St. Paul police officers provided continuing education, speakers, and classes at Hamlin. And I don't think that Iqbal calls for us to create sort of geometric equations with to the court as to the facts. I think what Iqbal says is the facts must be plausible in terms of a claim for relief. And I think these facts are more than plausible for a plaintiff who's had zero opportunity for discovery, Judge. And therefore, I think that that paragraph, as well as the reminder in 49 and 50 in the email that remember our boycott, so to speak, remember us, now we want her to be fired. Thank you very much. Thank you, Mr. Goins. Court wishes to thank all the attorneys representing the parties here this morning. Thank you for the briefing which you've submitted and your argument this morning. Consider the case submitted. We'll render decision in due course.